IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Christopher T.,**[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) No. 22 C 5239 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Christopher T.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 14, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [dkt. 17, Def.'s Mot.] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by his first name and the first initial of his last name.

**BACKGROUND**

I.     **Procedural History**

On March 19, 2020, Plaintiff filed a claim for DIB and SSI, alleging disability since March 1, 2018, due to bipolar I disorder with psychotic features. [Dkt. 9-1, R. 316-19, 322.] Plaintiff later amended his alleged onset date to January 1, 2019. [R. 18.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 92-133, 136-83.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 14, 2021. [R. 35-91.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 44-80.] Vocational expert ("VE") Eric Dennison also testified. [R. 80-90.] On December 2, 2021, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. [R. 12-34.] The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 1-8.]

II.    **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 16-18.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date of January 1, 2019. [R. 18.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: depression/bipolar disorder and anxiety disorder. [Id.] The ALJ concluded at step three that his impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 19-21.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work with the following additional limitations: occasionally climb ramps/stairs and ladders/ropes/scaffolds; frequently stoop; occasionally kneel, crouch, and crawl and should avoid

concentrated exposure to unprotected heights and moving mechanical parts; can understand, remember and carry out instructions for simple work but would have difficulty to varying degrees with detailed or complex tasks; can sustain work activity at an acceptable pace with normal breaks and supervision but should not be assigned tasks with hourly production quotas or timed tasks; he would work best in a static environment without sudden/abrupt changes in routine; and can interact infrequently and incidentally with the public. [R. 21.] At step four, the ALJ concluded that Plaintiff would not be able to perform his past relevant work. [R. 27.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, such as "cleaner II," linen room attendant, and laundry worker I, leading to a finding that he is not disabled under the Social Security Act. [R. 28-29.]

## **DISCUSSION**

### **I.     Judicial Review**

Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a).

"A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837; *see also Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse

4

into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

**II.    Analysis**

Plaintiff argues that the ALJ (1) inappropriately assessed the medical opinion of Plaintiff's psychiatric provider, PMHNP-BC[2] Yvette Johnson, and failed to support that assessment with substantial evidence, (2) erred in relying on the state agency reviewing sources to support the ALJ's RFC determination, again failing to support that assessment with substantial evidence, and (3) improperly evaluated Plaintiff's symptoms, in violation of SSR 16-3pm. [Dkt. 14, Pl.'s Mem. At 6-15; dkt. 19, Pl.'s Reply at 2-14.] The Commissioner argues in opposition that the ALJ properly considered the medical opinions and offered compelling reasons to discount Plaintiff's reports of his subjective symptoms. [Dkt. 18, Def's Mem., at 2-12.] After reviewing the record and the briefs submitted by the parties, this Court agrees that the ALJ failed to adequately explain her analysis of NP Johnson's opinion and did not provide this Court with a logical bridge to understanding the ALJ's assessment of that evidence. Because this failure alone warrants remand, the Court does not reach Plaintiff's additional arguments.

As Plaintiff's claim for benefits was filed after March 17, 2017, the evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under that regulation, the opinions of

---

[2] Psychiatric-Mental Health Nurse Practitioner—Board Certified, hereafter shortened to "NP."

treating physicians are not entitled to special deference or controlling weight. Rather, opinions from any medical source are evaluated against certain factors, including 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of time the source has treated the claimant, the frequency of examinations, and the purpose and extent of the treatment relationship, and whether the relationship was an examining one; 4) the source's specialization; and 5) other factors. 20 C.F.R. § 404.1520c. The "most important factors"—and the only factors that the ALJ is required to discuss in his decision—are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ found that Plaintiff could do medium work with a few physical limitations and, as relevant here, certain mental limitations. Specifically, the ALJ found that Plaintiff could understand, remember and carry out instructions for simple work but would have difficulty to varying degrees with detailed or complex tasks; he can sustain work activity at an acceptable pace with normal breaks and supervision, but should not be assigned tasks with hourly production quotas or timed tasks; he would work best in a static environment without sudden/abrupt changes in routine; and he can interact infrequently and incidentally with the public. [R. 21.] In reaching this RFC, the ALJ noted that it found the opinion of NP Johnson, Plaintiff's psychiatric provider, "persuasive but not fully so." [R. 26.]

6

NP Johnson filled out a mental impairment questionnaire on April 2021, based on Plaintiff's diagnosis of bipolar disorder for which she had been treating Plaintiff since October 2019. [R. 680-82.] She noted that Plaintiff experienced poor memory, sleep disturbance, emotional lability, decreased energy, difficulty thinking or concentrating, social withdrawal or isolation, and generalized persistent anxiety. [R. 680.] She further noted that Plaintiff sometimes experienced panic attacks and disproportionate fear or anxiety in various situations and that his mood fluctuated between manic and depressed. [R. 680-81.] She noted his prognosis as "fair at best." [R. 681.] NP Johnson indicated that she anticipated Plaintiff would be absent work more than three times a month due to his impairments and that his symptoms would interfere with his attention and concentration 21% or more of the workday because he had "poor focus & attention" and was "easily distracted." [R. 681-82.]

As for limitations caused by his mental health diagnosis, NP Johnson was asked to rate whether Plaintiff was "mildly limited," "moderately limited," or "markedly limited"[3] in four broad domains: (a) understanding, remembering, or applying information, (b) interacting with others, (c) concentration, persistence, or maintaining pace, and (d) limitations in adapting or managing oneself. [R. 682.] NP Johnson found Plaintiff "markedly" limited in all four. [Id.] The questionnaire also asked NP Johnson to choose among the same three ratings for Plaintiff's functional limitations in 17 specific "mental abilities and aptitude[s] needed to do unskilled work." [R. 681.] On this list, NP Johnson opined that Plaintiff was "mildly" limited in seven abilities: (1) remembering locations and work-like procedures; (2) understanding and remembering very short

---

[3] "Mild" was defined as a "slight limitation in this area, be the individual can generally function well." Moderate was defined as being "more than a slight limitation in this area but the individual is still able to function satisfactorily." And "marked" was defined as a "serious limitation" with "a substantial loss in the ability to effectively function." [R. 681.]

and simple instructions; (3) carrying out very short and simple instructions; (4) making simple work-related decisions; (5) asking simple questions or requesting assistance; (6) accepting instructions and responding appropriately to criticism from supervisors; and (7) being aware of normal hazards and taking appropriate precautions. [R. 681.]

She found he was "moderately" limited in three abilities: (1) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; (2) sustaining an ordinary routine without special supervision; and (3) getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. [Id.]

NP Johnson found that Plaintiff was "markedly" limited in seven abilities: (1) maintaining attention and concentration for extended periods; (2) working in coordination with or proximity to others without being unduly distracted by them; (3) completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; (4) interacting appropriately with the general public; (5) responding appropriately to changes in a routine work setting; (6) traveling in unfamiliar places or using public transportation; and (7) setting realistic goals or making plans independently of others. [R. 681.] In support of this assessment, NP Johnson stated that Plaintiff had a "very structured routine," was "monitored by parents," and "requires supervision." [Id.] She wrote that he had a "short attention span," was "easily distracted" and "isolated" and was "fearful in public places." [R. 681-82.]

The entirety of the ALJ's discussion of the weight she gave to NP Johnson's opinions is as follows:

> The undersigned has also considered the April 2021 opinion of Yvette M. Johnson, PMNP-BC, at Exhibit 11F. However, while considered, the undersigned finds this opinion somewhat persuasive but not fully so. The undersigned agrees the evidence, including visit notes from this provider, reflects the presence of mental health

8

> impairments that impose some degree of functional restrictions. However, the extent of limitation indicated in this opinion is not supported by or consistent with the record. "Marked" limitations in all functional domains is not supported. The undersigned notes that this source does check boxes for mild limitations with respect to claimant's capacity for understanding and carrying out short/simple instructions, making simple decisions, and asking for and interacting with supervisors and finds the preponderance of the objective medical and other evidence in the file agreeable to this particular degree of restriction. However, there is no indication in this same source's visit notes that claimant would miss 3 days of work per month, except for claimant's self-observation that he is unmotivated. Noteworthy, claimant is described as medication-compliant with a fair prognosis.

[R. 26-27.] In concluding that NP Johnson's opinion was not "supported by or consistent with the record," the ALJ did not acknowledge the ways NP Johnson had supported her ratings by stating the clinical findings supporting her assessments, nor did the ALJ cite to or explain what evidence purportedly contradicted or was inconsistent with NP Johnson's opinions. Because 20 C.F.R. §§404.1520c(b)(2) requires the ALJ to explain *how* the medical source opinion was inconsistent with and/or unsupported by the record, supplying only a rote conclusion, as above, is insufficient to allow judicial review and requires remand. *Patrice W. v. Kijakazi*, No. 20 C 02847, 2022 WL 2463557, at *3-4 (N.D. Ill. July 6, 2022) ("The ALJ thus failed entirely to explain the supportability of the consultants' opinions, and only identified a conclusion—as opposed to an explanation—with respect to the consistency of the consultants' opinions with the record.")

The only aspect of NP Johnson's opinion that the ALJ provided an explanation for rejecting was NP Johnson's opinion that Plaintiff would miss three or more days of work per month due to his mental health symptoms. [R. 27.] Suggesting that this opinion was inconsistent with NP Johnson's own medical notes, the ALJ stated that there was "no indication" in NP Johnson's "visit notes that claimant would miss days of work per month, except for claimant's self-observation that he is unmotivated." [R. 27.] But it is unclear why a psychiatric provider's treatment notes would include commentary or predictions about whether a patient would be likely to miss work,

9

especially since the Plaintiff was unemployed throughout the period that NP Johnson treated him. "[T]he mere absence of detailed treatment notes, without more, is insufficient grounds for disbelieving the evidence of a qualified professional." *Brown v. Colvin*, 845 F.3d 247, 253 (7th Cir. 2016).

Moreover, the Commissioner's argument [dkt. 18 at 5] that the ALJ was justified in rejecting this limitation because NP Johnson's treatment notes showed Plaintiff "doing well" with "no problems or concerns" is not accurate. In fact, NP Johnson's notes demonstrate that Plaintiff experienced an exacerbation of mental health symptoms at several of his appointments. At a March 24, 2021, appointment, Plaintiff reported panic attacks, anxiety, agoraphobia, and paranoia. [R. 721.] As a result, NP Johnson adjusted his medications. [R. 721, 723.] At follow-up appointments in April and May, he reported doing well. [R. 723-24.] In June though, he reported feeling more anxious, attributing it to concerns about his father's health. [R. 725.] In September 2021, he presented with an anxious mood, was "depressed, tearful at times" and noted an increase in anxiety and depression. [R. 726.] And in October, he again presented with an anxious mood, "ruminating about his parent's [sic] getting older and dying," with "extreme worry about who will take care of him." [R. 727.]

The ALJ's summary of the September and October 2021 treatment notes, also repeated by the Commissioner, [R. 24; Dkt. 18 at 2-5, 10-12], inaccurately states that Plaintiff was "doing well" during these visits. Pages before the section discussing the weight given to NP Johnson's opinion, the ALJ summarized the contents of NP Johnson's treatment notes from January through October 2021. [R. 24.] With regards to treatment notes from September and October 2021, the ALJ acknowledged that Plaintiff was reporting increased anxiety and depression but concluded that Plaintiff "was still doing well overall." [Id.] In fact, the only part of those notes that says

10

Plaintiff was "doing well" are the "history of present illness" sections, which for both appointment dates begin with the phrase "on previous visit." [R. 726-27.] Indeed, the content of these sections are identical between the September and October appointment treatment notes, and appear to be summarizing the same "previous visit" on June 23, 2021. [*Compare* R. 726-27 to R. 725.] The Commissioner repeats this error, arguing that medication had improved Plaintiff's mood swings and anxiety, so the ALJ was justified in rejecting NP Johnson's opinions of more serious limitations. [Dkt. 18 at 2-6.] This erroneous recitation of the record casts further doubt on the ALJ's assessment of NP Johnson's opinion and perceived inconsistencies between that opinion and the treatment notes. *See, e.g.*, *Mayassah A. v. Saul*, No. 19 C 1301, 2020 WL 7337817, at *4 (N.D. Ill. Dec. 14, 2020) (finding error where ALJ referred to notes as saying plaintiff was "doing well" when "the note does not say just that").

The ALJ also explicitly rejected NP Johnson's opinion that Plaintiff had marked limitations in the four broad domains. [R. 26.] While no further analysis or explanation is provided in the ALJ's discussion of NP Johnson's opinion, the ALJ's discussion at Step Three does explain why the ALJ concluded that Plaintiff did not have "marked" limitations in these same domains, such that Plaintiff's impairment did not meet or medically equal the severity of any listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [R. 20.] While the Court is permitted to consider the ALJ's discussion of the relevant evidence in other sections of the opinion, *Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021), the ALJ's discussion at the Step Three also fails to accurately portray or analyze the record evidence supporting more serious limitations.

For example, the ALJ found that plaintiff had no more than a moderate limitation in the domain of interacting with others. [R. 20.] In so doing, the ALJ acknowledged Plaintiff's testimony about frequent episodes of delusions, paranoia, and increased irritability with excessive anger and

11

that there were "some apparent indications of paranoia in claimant's speech at the time of the hearing" but dismissed this evidence stating that "there is very little mention of this in the records and no indication for any treatment recommended or administered specifically related to this." [Id.] In fact, NP Johnson's treatment notes mention symptoms of paranoia, [R. 720-21], and records from a 2019 psychiatric hospitalization specifically note that Plaintiff was being hospitalized for severe paranoia, bizarre behaviors, previous suicide attempts, ongoing suicidal ideation, possible visual hallucinations, delusions, social isolation, loss of interest, and lack of motivation. [R. 451.] Those records also note Plaintiff's "extensive history of quitting jobs as a result of paranoia." [Id.]

The ALJ went on to say that "[c]laimant has generally interacted well with examiners with no report of any extensive behavior abnormalities. He presumably interacts well with his elderly parents, with whom he resides and is the primary caretaker." [Id.] Again, this summary ignores record evidence to the contrary. Plaintiff testified that he had lived with his parents for most of his life, except for a brief period during and following college when he lived on his own. [R. 44-45.] He moved back in with his parents around 2011 and, when asked why he had not left home again, he explained that his parents had always taken care of him, he had been "pretty sheltered" in his life, and he was not able to sustain functioning by himself. [R. 45-46.] The ALJ characterized this relationship as Plaintiff being the "primary caretaker" of his elderly parents. [R. 20.] While Plaintiff did testify to concerns about his parents' health and some ways in which he assisted his parents with tasks like shopping, vacuuming, and keeping them company, he also testified that he generally stays in his room in the basement and tries not to interact with his parents too much because he does not want to upset them with his anxiety, depression, and "behaviors." [R. 61-64,

12

67.] He similarly reported to the consultative examiner that he depends on family for most laundry and shopping. [R. 663.]

Plaintiff testified to his history of bipolar disorder, depression, and anxiety, including frequent episodes of delusions, paranoia, and increased irritability with excessive anger. [R. 46-49, 52-60, 69.] He testified that he had been investigated in college and at most of his jobs, stating that he was wrongly accused of rape; tainting blood products he was transporting as part of his employment; and bringing a gun to a security job. [46-60.] He testified repeatedly that his coworkers at different jobs had started rumors about him, had started following him, or were just generally "cutthroat," leading him to quit several jobs after just a few months working at each. [R. 47-58.] In fact, Plaintiff testified to quitting one job on the very first day due to feeling panic, depression, and suicidal thoughts. [R. 52-53] He had not worked since 2018, in a job he had held for just seven months, [R. 662] and was hospitalized in 2018 and 2019 for psychiatric reasons. [R. 651; 451.] For six years he had taken psychiatric and anti-depressant medications including Geodon, Effexor, and Clonazepam. [R. 663.]

This testimony and medical record evidence appears consistent with, and certainly not contradictory to, NP Johnson's assessment that Plaintiff had marked limitations in interacting with others, adapting and managing himself, and maintaining concentration, persistence and pace. [R. 682.] They also corroborate NP Johnson's opinion that Plaintiff might miss work three or more days a month due to symptoms of his mental illness such as paranoia and delusions, anxiety and fear, or desire for social isolation. [R. 680.] At the very least, the ALJ's mischaracterizations and failure to contend with certain evidence casts doubt on whether the ALJ's rejection of NP Johnson's opinion is supported by substantial evidence.

13

Even if the ALJ's discussion in the Step Three section was sufficient to explain why the ALJ was rejecting NP Johnson's finding of marked limitations in the four broad domains, the ALJ still did not explain what weight she was giving to NP Johnson's assessment of moderate and marked limitations in the specific skill areas or why she was leaving them out of the RFC. *Matthew Z. v. Kijakazi*, No. 20 C 5698, 2022 WL 580784, at *4 (N.D. Ill. Feb. 25, 2022) (ALJ failed to explain why she found some aspects of the treater's opinion to be more credible than the portions of the questionnaire finding greater impairments); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability.").

Consistent with the ALJ's statement that she found NP Johnson's opinions "persuasive but not fully so," the RFC does account for *some* of the "specific skill" limitations found by NP Johnson, but not all of them. The only mental limitations related to concentration, persistence, and pace were that Plaintiff not be assigned tasks with hourly production quotas or time tasks and be limited to a static environment without sudden/abrupt routine changes. In contrast to NP Johnson's opinion -- that Plaintiff was moderately limited in maintaining regular attendance, being punctual within customary tolerances, sustaining an ordinary routine without special supervision, and markedly limited in maintaining attention and concentration for extended periods and working in coordination with or proximity to others without being unduly distracted by them -- the RFC finds that Plaintiff can sustain work activity at an acceptable pace with normal breaks and supervision. Similarly, with regard to interacting with others, NP Johnson opined that Plaintiff would be moderately limited in getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and markedly limited in working in coordination with or proximity to others without being unduly distracted by them and interacting appropriately with the general

14

public, yet the ALJ did not assess any limitations regarding Plaintiff's interactions with co-workers; the ALJ only limited Plaintiff's RFC to infrequent and incidental interaction with *the public*. [R. 21.]

The Commissioner argues that the ALJ found NP Johnson's opinion "internally inconsistent" because it assessed marked limitations in the broad domains while assessing only mild or moderate limitations on some of the specific skill areas. [Dkt, 18 at 5.] But the ALJ does not say that "*internal* inconsistencies" were the reason she rejected the opinion, rather the ALJ accepted the mild limitations assessed by NP Johnson while stating that the "marked" limitations NP Johnson assessed were "not supported by or consistent with *the record*." [R. 26 (emphasis added)]. This Court may not accept an explanation provided by the Commissioner that was not relied upon by the ALJ, *see SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943); *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012). And in any case, it not necessarily inconsistent to find that a person with a psychiatric impairment might maintain certain specific abilities while still being significantly limited in other areas or overall.

For all of these reasons, the Court finds that the ALJ's discussion of NP Johnson's opinion does not permit the Court to trace the path or reasoning used by the ALJ to reject many of the limitations opined on by NP Johnson, preventing this Court from meaningfully reviewing the RFC assessment. *See Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015) (finding error where ALJ failed to adequately articulate why treating physician's opinion was unsupported by the record or internally inconsistent.)

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 14] is granted, and the Commissioner's motion for summary judgment [dkt. 17] is denied. The Commissioner's

15

decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 7/10/23

*Beth W Jantz*

BETH W. JANTZ
United States Magistrate Judge

16